UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

-v- No. 20-CR-122-LTS

WILLIAM JIMENEZ,

Defendant.

-------------------------------------------------------x

MEMORANDUM ORDER

Defendant William Jimenez has been detained on consent since his arrest, without prejudice to a bail application, at the Metropolitan Correctional Center ("MCC"), while awaiting trial on charges of distributing and possessing with intent to distribute mixtures and substances containing a detectable amounts of heroin and fentanyl, in violation of 21 U.S.C. § 812, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. section 2, being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) and 2, and possession and use of a firearm in furtherance of a federal drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii) and 2. Mr. Jimenez moves for release on conditions of bail, noting that the MCC has identified him as an inmate who, on account of his medical conditions, is at heightened risk from COVID-19. (Docket Entry No. 9, at 2.) The Government opposed Mr. Jimenez's motion, (docket entry no. 10), and on April 14, 2020, the Court held a telephonic hearing on Mr. Jimenez's motion. Mr. Jimenez, having waived his personal appearance, appeared through counsel. The Court directed the government to file exemplars of the video and identification evidence upon which it relies, which the Government has done. (Docket Entry No. 14.) Mr. Jimenez has filed a reply to that submission. (Docket Entry No. 15.) The Court has considered carefully all of the written submissions and arguments, and has also reviewed the April 9, 2020, Pretrial Services report

summarizing Mr. Jimenez's criminal history, which was provided to counsel by the Pretrial Services Officer.

Because Mr. Jimenez has been detained on consent until now, the Court must first address the threshold question of whether, under the criteria established by the Bail Reform Act of 1984, 18 U.S.C. §§ 3141–3156 (the "Bail Reform Act"), he is someone who must, absent satisfaction of the criteria for temporary release, continue to be detained.  Section 3142(e)(1) of the statute requires that an accused be detained pending trial where, following a hearing in accordance with section 3142(f), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Risk of flight must be shown by a preponderance of the evidence and danger to the community must be shown by clear and convincing evidence.  The factors that a judicial officer must consider "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community" include "the nature and circumstances of the offense charged, including whether the offense is a crime of violence" or involves a firearm; "the weight of the evidence against the person"; "the history and characteristics of the person"; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  Furthermore, because Mr. Jimenez has been charged with an offense under 18 U.S.C. § 924(c), there is a presumption that "no condition or combination of conditions will reasonably assure [his] appearance . . . as required and the safety of the community."  18 U.S.C. § 3142(e)(3)(B).

The Court concludes that the Government has demonstrated by clear and convincing evidence that no condition or combination of conditions will reasonably assure the

safety of any other person or the community. The Court's conclusion is based primarily on: (i) the gravity of the offenses with which Mr. Jimenez stands charged, which include engaging in a shooting in broad daylight and which subject him to a potential ten-year mandatory minimum sentence; (ii) the strength of the Government's evidence against Mr. Jimenez, which includes video surveillance of a shooting by a man wearing distinctive clothing and surveillance video showing a man wearing such clothing and with facial hair and features consistent with those of Mr. Jimenez approaching and leaving the scene of the shooting; (iii) a statement by the victim that the shooter was his drug dealer whom he knows as "Flip," a name used by Mr. Jimenez during sales of narcotics to undercover police officers; (iv) the victim's identification of Mr. Jimenez's photo as that of the person who shot him;[1] (v) Mr. Jimenez's arrest near the scene of the shooting three hours later wearing the same clothing as the shooter; and (vi) Mr. Jimenez's serious and lengthy criminal history, which would subject him to the career criminal sentencing guideline.

Mr. Jimenez proffers that home confinement and GPS monitoring will ensure that he will remain in his mother's home to care for his daughter, overcoming the presumption and sufficiently addressing any risk of danger. (Docket Entry No. 9, at 9.) While the Court finds that Mr. Jimenez has rebutted the presumption by "coming forward with some evidence that he will not flee or endanger the community if released," see United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986), he has not rebutted the Government's evidentiary proffers concerning the risk of danger he poses to the community, particularly where he appears to propose release into

---

1 The Defense argues that a single photo displayed to the victim is unreliable where the victim is not alleged to have a "close relationship or familiarity" with the Defendant. (Docket Entry No. 14, at 2.) However, the Government has proffered that the victim was familiar with his drug dealer "Flip," whom the victim had already stated was the shooter. (Docket Entry No. 15, at 2.)

the same community as the one where the charged offense occurred, during a pandemic when supervision and policing resources are strained. Under these circumstances, 18 U.S.C. § 3142(e)(1) requires the entry of an order of detention.

In the alternative to general release on conditions, Mr. Jimenez seeks temporary release to monitored confinement at the home of his mother during the current public health emergency arising from the COVID-19 pandemic, citing two serious health conditions which place him at a higher risk of suffering more serious, potentially deadly, manifestations of the disease.

Under 18 U.S.C. § 3142(i), the Court has the legal authority to grant relief from an order of detention entered under 18 U.S.C. § 3142(e). Section 3142(i) permits the temporary pretrial release of a defendant otherwise requiring detention into the custody of a U.S. marshal or other "appropriate" person where "the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Courts in this District have done so in appropriate cases; indeed, in certain circumstances, a serious medical condition can constitute a "compelling reason" under this provision. See, e.g., U.S. v. Perez, No. 19-CR-297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application of 65-year-old defendant with COPD, pursuant to 18 U.S.C. § 3142(i), in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19"). Mr. Jimenez has the burden of showing that temporary release is necessary under 3142(i). See U.S. v. Dupree, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011).

Mr. Jimenez's argument regarding temporary mitigation of the risk of flight because of fear of a life-threatening contagion does not address sufficiently the very serious issue of the danger he poses to the community, given his history of involvement in violent crime and the strong evidence relating to the instant charges of participating in life threatening gun violence in broad daylight.  In this regard, it is significant that the Government proffers that the shooting incident was related to narcotics trafficking.  Supervision and policing resources are particularly strained during the current pandemic conditions, heightening the importance of protection of the community from persons and circumstances that pose documented threats.

The Court does not take lightly the elevated risk that Mr. Jimenez's confinement and medical history pose for his own health and safety.  The current public health crisis does present an elevated risk for those who are confined compared to those in a situation in which social distancing is more feasible.  The BOP has, however, implemented policies and consulted with appropriate experts to develop and implement strategies to mitigate the risks posed by COVID-19 insofar as possible in the context of its facilities, resources, and mission.  The BOP's mitigation measures do not, and cannot, eliminate the risk of COVID-19, but these measures are calculated to mitigate the risk of infection in its inherently close quarters, for all persons in custody and BOP staff.  Here, Mr. Jimenez presents a danger to the public that is neither negated nor overcome by the risk that COVID-19 admittedly creates for all members of our society. Public safety depends on successful management of those risks both in ordinary times and in times of emergency.  Medical risks that are presented by crowding and other conditions in MCC, and by Mr. Jimenez's specific asthma and prior sarcoidosis diagnoses, must be balanced against clear and convincing objective indicators of significant danger to the community and potentially flight-inducing penalty exposure that here outweigh the heightened medical risk factors for this

individual.  Temporary release of a person whom the evidence indicates has been willing to shoot another person over a drug dispute on the street in broad daylight endangers communities, challenges compromised supervision resources, and presents a possibility that a future remand for a violation of supervised release conditions could be delayed or impossible because he will have been exposed to potential virus sources outside of the detention facility.  Accordingly, Mr. Jimenez has not met his burden of showing that the risk of violence he poses is overcome by a compelling medical reason necessitating temporary release.  The Court does not minimize the seriousness of the risk that continued detention poses to Mr. Jimenez's health given the relation between the known respiratory effects of contracting COVID-19 and his asthma and history of sarcoidosis.  However, the risk of danger to the community that Mr. Jimenez poses cannot reasonably be managed by any temporary conditions of release.

The Court also finds Mr. Jimenez's argument that temporary release is warranted because he faces challenges preparing his defense is insufficient to meet the statutory standard.  He cites the suspension of legal visits at the MCC, and a long period in which officials at the MCC did not arrange for Mr. Jimenez to speak with his counsel by telephone, despite numerous requests.  (Docket Entry No. 9, at 8.)  Counsel also notes that when she was able to speak with Mr. Jimenez by telephone, a counselor was present with him in the room during the entire call, making her perceive that discussion of confidential information was impossible.  (Docket Entry No. 15, at 5.)

While the situation is not ideal, general telephone privileges at the MCC have been increased in light of the visiting restrictions associated with the COVID-19 measures.  The Bureau of Prisons ("BOP") is putting in place additional facilities for video and teleconferencing with counsel.  The BOP is continuing to permit teleconferencing with counsel and access to

programs and services as permitted by the mitigation measures being taken. The protocol for consultations with counsel is for detainees to be observed visually by a staff member for security reasons, but for such observation to be done from outside the room. An isolated violation of this protocol does not, on its own, warrant release of a person otherwise required detained. Importantly, this case is in its early stages, with no imminent trial or proceedings, and so temporary release is not necessary to prepare a defense in these times of unusual and temporary crisis conditions. For the same reasons, the related constitutional objection Mr. Jimenez has raised to his detention with limited access to attorney consultation is unavailing under the current public health emergency circumstances. The Court, accordingly, finds that Mr. Jimenez has not sustained his burden of demonstrating that temporary release pursuant to 18 U.S.C. § 3142(i) is necessary or appropriate in his case.

The Court therefore grants the Government's application for detention pursuant to 18 U.S.C. § 3142(e) and denies Mr. Jimenez's application for temporary release pursuant to 18 U.S.C. § 3142(i). An order of detention will be entered.

This Memorandum Order resolves docket entry numbers 9 and 11.

SO ORDERED.

Dated: New York, New York
April 24, 2020

_/s/ Laura Taylor Swain____
LAURA TAYLOR SWAIN
United States District Judge